On Rehearing—Determination of the Merits.
ST. PAUL, J.
Plaintiff is a commercial firm composed of Carl August Held, a resident of Bremen, Germany, and Hanz Herzog, a resident of New York. They brought suit against defendant for a balance of $2,-500 due on an account, which is not disputed.
[4] ? Defendant in reconvention claims $2,-000 damages for breach of contract’ to deliver 2,000 pockets of a certain rice at ?4 per pocket, and which defendant had to'replace with rice of as nearly as possible the same quality at $5 per pocket. The defense to this reconventional demand, which is the only matter at issue in this case, is that *603 plaintiff was prevented from fulfilling its contract by forces beyond its control, to wit, the war between England and Germany, which was flagrant on August 12, 1914, when the rice was to be shipped.
The contract of sale, dated at New Orleans July 21, 1914, reads as follows:
“Sold to R. Goldsmith, New Orleans, 2,000 pockets, type 232, Bassein rice, price, $4 per 100 lbs., docks, New Orleans, duty paid. Shipment on Leyland Line Steamer Sylvanian, due to sail on August 12th. Terms, net cash, 10 days.” '
Bassein rice is grown in India and milled in Holland, and type No. 232 is the product of a particular mill for that year.
The Sylvanian was a British ship and was scheduled to sail from Antwerp, in Belgium, on August 12, 1914, but, owing to the outbreak of war could not go to Antwerp, and sailed from London a ,few days later. Pretermitting the question whether or not, in the light of the circumstances, the contract contemplated a shipment from Antwerp, from which port the Sylvanian was scheduled to sail on August 12th, nevertheless the contract provides expressly that the shipment should be by the Sylvanian. .
But Held was a German citizen, and the Sylvanian a British ship, and, on well-settled principles of international law, Held could not ship by the Sylvanian.
“AH trading, negotiation, communication, and intercourse between the citizens of one of the belligerents and those of the other, without the permission of the government, are unlawful. No valid contract can be made, nor can any promise arise by implication of law, from any transaction with an enemy. Executory contracts with an alien enemy, or even with a neutral, if they cannot be performed except in the way of intercourse with the enemy, are dissolved by the declaration of war, which operates for that purpose with a force equivalent to an act of Congress.” 15 Ruling Case Law, 189.
Goldsmith, it is. true, was a neutral, but Held could hot perform his contract with Goldsmith, in so far as it concerned shipping .by the Sylvanian, except “in the way ‘of in-
tercourse with the enemy,” and accordingly, if shipping by that vessel was an essential element of the contract, then Held was discharged by the outbreak of war between England and Germany.
[5] But this was a contract between merchants, a shipping contract, and expressly provided that the shipment should' be by the Sylvanian; and, whilst it may readily be seen that the ship is a matter of importance because of insurance, freight rates, seaworthiness, speed, regularity of sailing, and other considerations, nevertheless it is not important that the reasons for which a certain ship was stipulated should be given or should appear, and it suffices that such a stipulation should be made. , 11
As said by Lord Chancellor Cairns in Bowie v. Shand, 2 Appeal Cases (H. L.) 463:
“It does not appear to me to be a question for any court to consider whether that is a contract which bears upon the face of it some reason, some explanation, why it is made in that form, and why the stipulation is made that the shipment should be made during these particular months. It is a mercantile contract, and merchants are not in the habit of placing upon their contracts stipulations to which they do not attach some value and importance.”
And Lord Hatherley said (page 475):
“The view that I take of the contract, I confess, is this, that it is not the article rice only that is sold, but the thing that is sold is the article rice shipped in March or April, and the article rice shipped in February is not the article which has been purchased by the defendants.”
And Lord Blackburn said (page 480):
“It is argued, or tried to be argued, on one point, that it is enough that it was rice, and that it was immaterial when it was shipped. * * * But I think that is quite untenable. * * * If the description of the article tendered is different in any respect, it is not the article bargained for, and the other party is not bound to take it. I think in this case what the parties bargained for was rice, shipped at Madras or the coast of Madras. Equally good rice might have been shipped a little to the north or a little to the south, and probably equally good rice might have been shipped in February as w.as shipped in March, or equally *605 as good rice might have been shipped in May as was shipped in April; and I dare say equally good rice might have been put aboard another ship as that which was put on board the Rajah of Cochin. But the parties have chosen, for reasons best known to themselves, to say: We bargain to take rice shipped in this particular region, at that particular time, on board that particular ship. And before defendant can be compelled to take anything in fulfillment of that contract, it must be shown not merely that it is equally good, but that it is the same article as they bargained for; otherwise they are not bound to take it.”
In the case before us one party agreed to sell, and the other to buy, rice to be shipped by the steamer' Sylvanian. The stipulation to ship by the Sylvanian was put into the contract for reasons best known to the parties who put it in. As merchants, they were not likely to have put it in unless they attached some value and importance to it; and they owed no explanation why they put it in, but are entitled to stand by the contract as deliberately expressed by them in writing.
We are therefore of opinion that plaintiff bound itself to ship by the Sylvanian, and by no other ship, and that, when it became impossible for it to ship by the Sylvanian on account of the outbreak of the war between England and Germany, plaintiff was discharged from fulfilling same.
Decree.
It is therefore ordered that the judgment appealed from be affirmed.